# LEVINE & BLIT, PLLC

*Attorneys at Law*

EMPIRE STATE BUILDING
350 FIFTH AVENUE, 36TH FLOOR
NEW YORK, NEW YORK 10118
PHONE: (212) 967-3000 · FAX: (212) 967-3010
www.levineblit.com

February 2, 2017

*VIA ECF*
United States District Court
Honorable James Orenstein
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    <u>Aljuwani v. Lineage Ventures LLC et al. – No. 16-cv-5351</u>
             Joint Letter Motion for Settlement Approval

Dear Judge Orenstein,

      Plaintiff, Jameal Aljuwani ("Plaintiff"), and defendants, Lineage Ventures LLC,
FN 1030 Carroll LLC, and Ephraim Fruchthandler (collectively, "Defendants"), by and
through their respective attorneys, hereby respectfully submit this Joint Letter Motion for
Approval of the Settlement Agreement pursuant to *Cheeks v. Freeport Pancake House,
Inc.*, 796 F.3d 199 (2d Cir. 2015), and its progeny. Counsel for the Parties respectfully
submit that the Agreement constitutes a fair and reasonable compromise of the Fair Labor
Standards Act ("FLSA") claims in this matter which should be approved by the Court.

<u>Background</u>

      Plaintiff began his employment with Defendants in or about late November 2014.
Defendants own and manage a 48 unit residential apartment building in Brooklyn, New
York. Plaintiff has alleged that his duties of employment included janitorial duties in
Defendants' building (such as cleaning common areas and removing garbage) and
general labor duties in Defendants' buildings (such as electrical work, plumbing, and
plastering, among other work). Plaintiff alleged that he spent approximately 20-30 hours
per week performing his janitorial duties. Plaintiff further alleged that he spent
approximately 30 or more hours per week performing general labor. Neither party
maintained time records for the hours worked by Plaintiff.

      Between late November 2014 and about July 2015, Plaintiff was paid $200.00 per
week for all work performed. Between July 2015 and about March 2016, Plaintiff was
paid $250.00 per week for all work performed. Between about March 2016 and
September 23, 2016, Plaintiff was paid $365.00 per week for all work performed.

Throughout this time period, Defendants provided Plaintiff with a rent-free apartment in the building.

On September 21, 2016, Plaintiff's counsel emailed a demand letter to Mr. Fruchthandler concerning his FLSA claims. On September 22, 2016, Defendants' counsel contacted Plaintiff's counsel concerning the September 21, 2016 demand letter. On September 23, 2016, Plaintiff's counsel received from Defendants' counsel a letter dated September 21, 2016 stating that Plaintiff's employment was terminated. The instant action was commenced on September 26, 2016 alleging causes of action under the FLSA for (1) unpaid minimum wages; (2) unpaid overtime wages; and (3) retaliation.

### *Bona Fide* Disputes

1.   Number of Hours Worked and Duties of Employment

Plaintiff contends that he worked approximately fifty (50) to sixty (60) hours per week for Defendants during the statutory period, which consisted of more manual labor than janitorial work. Defendants contend that Plaintiff worked significantly less hours, and at no point worked more than forty (40) hours in a workweek.

Neither party maintained contemporaneous time records of the work performed by Plaintiff.

2.   Fluctuating Work Week

Plaintiff contends that the proper method to determine his overtime rate would be to divide his weekly pay by forty hours, and that the overtime premium rate should be equal to one and a half (1 ½) times his regular hourly rate. Plaintiff contends that when he was hired, there was no agreement as to whether the amount paid was meant to cover all hours worked in a work week.

Defendants contend that Plaintiff was fully compensated for all hours worked. Defendants further contend that, to the extent that Plaintiff could prove he worked any overtime, the fluctuating work week exception would apply because Plaintiff accepted employment under the verbal agreement that his weekly compensation was meant to cover all time worked in the week. *See* 29 C.F.R. § 778.114. As a result, Plaintiff would not be able to recover damages at the time and one-half rate, but rather the half-time rate during the statutory period.

3.     Janitor Exemption

Plaintiff contends that his work performing general labor was outside the scope of the Building Services Wage Order, and thus triggered 12 N.Y.C.R.R. § 141-2.11, which states, "[a]n employee in the building services industry who works for the same employer at an occupation governed by another New York State minimum wage order: (a) for two hours or more during any one day; or (b) for 12 hours or more in any week; shall be paid for all hours of working time for that day or week in accordance with the minimum wage standards contained in the minimum wage order for such other industry, or for the building service industry, whichever is higher." Therefore, Plaintiff posits that the Miscellaneous Wage Order would apply, which provides for a minimum hourly wage and overtime premium wage, among other provisions. 12 N.Y.C.R.R. §§ 142-2.1, 142-2.2, 142-2.4.

Defendants contend that Plaintiff was a statutory janitor pursuant to 12 NYCRR §§ 141-1.3 and 141-1.4, and was therefore exempt from the New York Labor Law's minimum wage and overtime provisions. This exemption would similarly prohibit Plaintiff's recovery of any alleged spread of hours premium.

4.     Offset to Wages for Rent-Free Apartment

Plaintiff contends that Defendants cannot prove the affirmative defense of offset for lodging because Defendants did not maintain records of the reasonable costs incurred in providing lodging. *See Leonard v. Carmichael Props. & Mgmt. Co.*, 614 F. Supp. 1182, 1187-88 (S.D. Fla. 1985) ("It is impossible for the court to determine what was the reasonable cost of the apartment because defendant has failed to proffer any evidence as to the expenses of providing it for plaintiff."); *see also Marroquin v. Canales*, 505 F.Supp.2d 283, 292 (D. Md. 2007) ("[W]here defendants have produced no records concerning the costs of facilities, they forfeit the ability to deduct the cost of the facilities.").

Defendants first contend that no offset is required as Plaintiff is a statutory janitor. In the alternative, Defendants would contend that, had litigation continued, they would have proffered evidence of the reasonable value or costs of lodging incurred by Defendants in providing Plaintiff an apartment through testimony and documentary evidence. Therefore, Defendants contend that Plaintiff's right to recovery damages, if any, would be reduced significantly.

5.     Willfullness

Plaintiff contends that Defendants were aware that the manner and amount in which Defendants were compensating him were in violation of the FLSA. Defendants deny that any alleged violations were willful.

3

6.    <u>Retaliatory Termination</u>

Plaintiff contends that his termination, which occurred days after his attorney first sent a demand letter, was retaliatory, as demonstrated by the temporal proximity of the protected activity and termination, along with subsequent animosity demonstrated by agents of Defendants. Defendants contend that they had already begun processing Plaintiff's termination prior to their knowledge of Plaintiff's engagement in alleged protected activity.

Settlement Terms

Annexed hereto as "<u>Exhibit A</u>" is a true and accurate copy of the Settlement Agreement between the parties. In exchange for a release of Plaintiff's claims under the FLSA and New York Labor Law, Defendants shall pay to Plaintiff the gross sum of $30,000.00 and provide for Plaintiff's occupancy of a rent-free apartment until March 31, 2017. Defendants shall also provide a neutral reference to prospective employers of Plaintiff. The parties have also agreed to mutual non-disparagement language, which both parties agree will be to their benefit. Notably, Plaintiff is not obligated to maintain confidentiality concerning any aspect of his claims or the settlement amount.

Reasonableness of the Settlement Amount

Here, through counsel, the parties engaged in good faith, arm's-length settlement negotiations. The terms and conditions of the settlement reflected in the Settlement Agreement are the product of the Parties' negotiations and represent a reasonable compromise of the *bona fide* disputed issues regarding the claims and defenses in this case. Given Plaintiff's lack of documentary evidence in support of his allegations and Defendants' affirmative defenses that, if proven, would off-setting the potential recovery or liquidated damages, continuing with litigation posed a significant risk to Plaintiff and his potential for a monetary recovery. Therefore, the parties respectfully request that this Court finds that the settlement amount is fair and reasonable.

Reasonableness of the Attorney's Fees

"To aid a court in determining the reasonableness of proposed attorney's fees, counsel must submit evidence providing a factual basis for the award." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). "A court determining the portion of a FLSA settlement reasonably allocated to attorneys' fees may use either a 'lodestar' method or a 'percentage of the fund.'" *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 U.S. Dist. LEXIS 53339, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016). When using a 'percentage of the fund' approach, "courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015). In determining a reasonable award of attorneys' fees, a court should also consider traditional criteria such as "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the

4

risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

The instant civil action is more complex than a traditional FLSA claim because it involves a plaintiff who received non-monetary compensation in addition to his monthly wages, and neither party maintained full records that would indicate the amount, type, or duration of work performed by Plaintiff. Further, significant risk was undertaken by Plaintiff's counsel by agreeing to accept Plaintiff's case on a contingency fee basis despite Plaintiff's lack of documentary proof of his hours worked in amount or by type. Plaintiff was provided with quality representation by knowledgeable and experienced counsel who focus their practice on wage and hour litigation. In addition to traditional monetary compensation obtained, Plaintiff's counsel was also able to secure three (3) months of free rent for Plaintiff and non-monetary compensation (*i.e.* neutral reference) that will be helpful to Plaintiff in obtaining future employment. Moreover, the fee requested (33 1/3%) reasonably relates to the recovery and is reasonable when applying the percentage of the fund method for determining attorney's fees. Lastly, public policy favors early resolution of claims in order to avoid unnecessary waste of the resources of the Court and the parties. Thus, Plaintiff respectfully requests that the Court applies the percentage of the fund methodology and award $10,000.00 to Plaintiff's counsel in attorney's fees and costs.

The attorney's fees and costs sought by Plaintiff's counsel pursuant to the Settlement Agreement are equal to $10,000.00, which is 33 1/3% of the total recovery (not including the monetary value of three months occupation of an apartment rent-free by Plaintiff) and is inclusive of costs incurred by Plaintiff's counsel. Plaintiff's counsel has incurred $8,910.00 in attorney's fees and $625.00 in costs in the litigation of the instant action. Annexed hereto as "Exhibit B" is a true and accurate copy of contemporaneous time records for work expended by Plaintiff's counsel and costs incurred in this action. Throughout this action, Plaintiff has been represented by Russell S. Moriarty, Esq. and the undersigned, Justin S. Clark, Esq. Mr. Moriarty is a senior associate at Levine & Blit, PLLC who focuses his practice on employment law litigation with over ten (10) years of experience. The undersigned, Mr. Clark, is a fourth year associate attorney at Levine & Blit, PLLC who focuses his practice primarily on wage and hour litigation, including class action litigation of the same. When billing clients (both plaintiffs and defendants) on an hourly basis, Mr. Moriarty and Mr. Clark generally bill at an hourly rate of $300.00.

Thank you for the Court's time and attention to this matter.

Respectfully submitted,

LEVINE & BLIT, PLLC

Justin S. Clark

5